UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COURTNEY SWIFT,

                                 Petitioner,                            Case No. 15-11055

v.                                                          HON. AVERN COHN

SHERRY BURT,

                                Respondent.

_____/

## MEMORANDUM AND ORDER
## DENYING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT (Doc. 5)
## AND
## DENYING PETITION FOR WRIT OF HABEAS CORPUS

### I.  Introduction

This is a habeas case under 28 U.S.C. § 2254.  Courtney Swift, ("Petitioner"), was convicted by a jury in state court of second-degree murder.  M.C.L. § 750.317. He is serving a sentence of 300-to-600 months' imprisonment.  The petition raises four claims:  (1) Petitioner's right to confront witnesses and right to present a defense were violated by the admission of hearsay; (2) insufficient evidence was presented at trial to sustain Petitioner's conviction; (3) the prosecutor committed misconduct; and (4) Petitioner's trial counsel was ineffective for failing to object to the misconduct. Respondent filed a motion for summary judgment contending that the petition was untimely filed.  (Doc. 5).

For the reasons that follow, the Court finds that the petition was timely filed but it is without merit.  As such, Respondent's motion will be denied and the petition will be denied.

II.  Background

The relevant facts relied upon by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).  See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009).  They follow:

On July 26, 2010, at approximately 2:45 p.m., Christina George received a call on her cell phone from her son, Ramone George. The call was made from the phone of "Tae," a friend of Ramone. Approximately five minutes later, Christina received another call from the number of "Nell" another acquaintance of Ramone. Christina was familiar with Nell, later identified as defendant, because she received calls, and often answered them, from Nell's number, and Nell would ask to speak with Ramone. Additionally, Christina had seen Nell pull up to the George house in a black SUV, either a Tahoe or Yukon, several times a week from May to July 2010. Christina did not pick up the initial call from Nell's phone. Christina received a second call from Nell's phone approximately two minutes after the initial call. Christina answered the call, and had a conversation with Ramone that caused her to change her travel plans again, because Ramone would not need to be picked up. Christina believed that Ramone sounded nervous during the call.

At approximately 3:00 p.m., a witness was sitting in her car at a gas station in Detroit when she heard what she believed to be four or five gunshots. She saw two black males "scuffling." A larger male was swinging at a smaller male with his hands, and the bigger male was carrying a gun. The smaller male appeared to be a teenager, aged 16 to 17 years, with a skinny build. The smaller man ran across the street into an automotive collision shop, and the bigger male chased him. A black Tahoe or Yukon followed, and ultimately picked the males up.

At approximately 3:00 p.m., another witness was working at his automotive repair shop, which was located across the street from the gas station where the previous witness had observed the males scuffling, when he noticed a young teenager attempting to hide from a Tahoe or Suburban. A black male entered the shop, grabbed the teenager, and forced him into the black SUV. The witness later identified the larger male as defendant, as well as the driver of the black SUV, in a photo lineup, but testified that the police officer conducting the lineup somewhat covered each photo except the two photos that he chose.

At some point between 3:00 p.m. and 4:00 p.m., Venus Thomas heard a young man screaming on her porch from inside her home on Philip Street in Detroit, which was located one to two blocks away from the

gas station and the collision shop. Thomas ran outside and observed an injured Ramone sitting on her porch. Ramone gave Thomas Christina's cell phone number, and Thomas called Christina to inform her that Ramone had been injured. Christina called her brother, Kenny George, and asked him to meet her at Thomas's house because Ramone had been hurt.

Upon arrival, Christina observed a badly injured Ramone sitting on Thomas's porch. Kenny asked Ramone who his attackers were, and Ramone responded, "that nigga Nell." Christina loaded Ramone into her car and drove him to a nearby hospital five minutes away. During the drive, Ramone told Christina that "they beat him and they hurt him real bad," and that "he felt that he was going to die." Ramone told Christina at least four times that it had been "Nell and Hitman." Ramone subsequently slipped into a coma and later died from his injuries.

Deidre George, Ramone's sister, testified that she knew defendant from around the neighborhood, and defendant and Ramone often played basketball together. Deidre also knew that defendant was often seen driving a black Tahoe. When Deidre learned of Ramone's injuries, she called to inform her cousin, Cortez George. Cortez, also a cousin to Ramone, was familiar with defendant because defendant had been "looking for" Ramone in the days leading up to July 26, 2010. Specifically, defendant had approached Cortez seven times in the week preceding July 26, 2010, in a black Tahoe and asked Cortez if he knew where Ramone was, and to tell Ramone that defendant was looking for him. When Cortez learned that Ramone had been injured, Cortez called an unidentified phone number and spoke to a "Michelle," who was the "baby momma" of "Hitman," an associate of defendant. Cortez asked to speak to defendant, and Michelle put defendant on the line. Cortez asked defendant what had happened to Ramone, and defendant initially claimed not to know. However, Cortez asked again, and defendant stated that Ramone "should have never been stealing." Cortez laughed and said, "come on," to which defendant replied, "and if you say something you could be next," and hung up.

The jury acquitted defendant of first-degree murder, but convicted him of the lesser charge of second-degree murder.

People v. Swift, No. 311189, 2013 WL 6481259, at *1-2 (Mich. Ct. App. Dec. 11, 2013).

Following his conviction and sentence, Petitioner filed a claim of appeal in the

Michigan Court of Appeals, raising the following claims:

I. The trial court's allowance into evidence of inadmissible hearsay, was

error which deprived Mr. Swift of his constitutional rights to a fair trial and
confrontation, due process of law and the right to present a defense,
guaranteed him under the Sixth and Fourteenth Amendments to the
United States Constitution and Const. 1963, art. 1, §§17 and 20.

II. The prosecution's evidence was insufficient to prove beyond a
reasonable doubt that Mr. Swift committed the crime of murder, or that he
aided and abetted the crime of murder; the murder conviction was not
supported by legally sufficient evidence and must therefore be reversed.

Petitioner also filed a supplemental pro se brief raising three additional claims:

III. Defendant due process rights and right to a fundamentally fair trial
were violated when the prosecutor improperly commented on defendant's
guilt, vouched for the credibility fo witness testimony; in the alternative trial
counsel was ineffective for failing to object to the remarks.

IV. The trial judge committed reversible error where the jury was
improperly instructed, resulted in a miscarriage of justice and violated
defendant's due process; in the alternative, trial counsel was ineffective for
failing to object to the improper jury instructions.

V. Mr. Swift was denied the effective assistance of trial counsel by his
failure to object to the prosecutor's inflammatory comments during his
closing statements and failed to object to the trial judge improper jury
instructions.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished

opinion issued on December 11, 2013. Id.

Petitioner attempted to appeal this decision by placing a delayed application for

leave to appeal addressed to the Michigan Supreme Court in the prison mail system on

January 29, 2013.  See Doc. 7, Exhibits D and E.

On October 4, 2015, Petitioner sent a letter to the Michigan Supreme Court

inquiring about the status of his appeal. Id., Exhibit B.  On October 9, 2014, the

Michigan Supreme Court responded by letter stating that it had not received an appeal

and Petitioner was now time-barred from filing one.  See. Id., Exhibit C; Doc. 6-11.

Petitioner's habeas petition was signed and dated on March 13, 2015 and filed

with the Court on March 19, 2015.

### III.  Statute of Limitations

#### A.  Legal Standard

Respondent says that the petition must be denied as untimely filed and moves for summary judgment on this ground.[1]  A prisoner must file a federal habeas corpus petition within one year of the "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . or the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2244(d)(1)(A) & (D).  The one-year limitations period begins at the expiration of the deadline for filing a petition for a writ of certiorari to the United States Supreme Court.  Bronaugh v. Ohio, 235 F.3d 280, 283 (6th Cir. 2000).  Equitable tolling is available to toll a statute of limitations when "'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'"  Robertson v. Simpson, 624 F.3d 781, 784 (6th Cir. 2010) (quoting Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 560-61 (6th Cir. 2000)).  The one-year limitations period applicable to § 2254 is "subject to equitable tolling in appropriate cases."  See Holland v. Florida, 560 U.S. 631, 645 (2010).  To be entitled to equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some

---

[1]Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. In considering a motion for summary judgment, the Court will construe all facts in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).  This standard of review may be applied to habeas proceedings.  See Redmond v. Jackson, 295 F. Supp. 2d 767, 770 (E.D. Mich. 2003).

extraordinary circumstance stood in his way' and prevented timely filing." Lawrence v. Florida, 594 U.S. 327, 336 (2007) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). A petitioner bears the burden of showing that he is entitled to equitable tolling. Robertson, 624 F.3d at 784.

### B. Analysis

Under Respondent's calculations, the statute of limitations starting running on February 5, 2014, the day after the deadline passed for filing an appeal in the Michigan Supreme Court. Because the petition was not signed until March 13, 2015, Respondent says it was untimely by over a month.

As noted above, Petitioner has proffered evidence that he in fact attempted to file an appeal in the Michigan Supreme Court by timely placing it in the prison mail system. See Doc. 7, Exhibits D and E. A little over nine months later, Petitioner sent a letter to the Michigan Supreme Court asking about the status of his appeal. Id., Exhibit B. On October 9, 2014, he learned that his appeal had never been received by the Michigan Supreme Court. See Id., Exhibit C; Doc. 6-11. About five months later, he filed the instant petition.

Equitable tolling is available to toll a statute of limitations when "'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" Robertson v. Simpson, 624 F.3d 781, 784 (6th Cir. 2010), quoting Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 560-61 (6th Cir. 2000). Here, Petitioner's proffered evidence creates a genuine issue of material fact as to whether he is entitled to equitably tolling. He has submitted documents indicating that he attempted to timely file an appeal in the Michigan Supreme Court, but

his application for leave to appeal was lost after it was turned-over to the prison mail system.  Petitioner had no way of knowing that his appeal was not filed.  While Petitioner waited for eight months to inquire about the status of his appeal, this gap does not show a lack of diligence.  It is not particularly unusual for an appeal to remain pending for a period of months.  Once Petitioner learned that his appeal was not filed, he acted with reasonable diligence to initiate this action.  Respondent is therefore not entitled to summary judgment on the statute of limitations.

IV.  The Merits[2]

A.  Legal Standard

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is bared under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it

---

[2]A petition for a writ of habeas corpus must set forth facts that give rise to a cause of action under federal law or it may summarily be dismissed. Perez v. Hemingway, 157 F. Supp. 2d 790, 796 (E.D. Mich. 2001).  Federal courts are authorized to dismiss any habeas petition that appears legally insufficient on its face. McFarland v. Scott, 512 U.S. 849, 856 (1994).  A federal district court is authorized to summarily dismiss a habeas corpus petition if it plainly appears from the face of the petition and the attached exhibits that the petitioner is not entitled to federal habeas relief. See Carson v. Burke, 178 F. 3d 434, 436 (6th Cir. 1999); Rules Governing § 2254 Cases, Rule 4, 28 U.S.C. foll. § 2254.  Here, as will be explained, it plainly appears from the face of the petition and the state court record filed by Respondent that Petitioner is not entitled to habeas relief because his claims are either not cognizable or plainly meritless under clearly established Supreme Court law.

'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam), quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) quoting Williams, 529 U.S. at 413.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S.86, 101 (2011), quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103 (internal quotation omitted).

### B.  Petitioner's Claims

#### 1.  Admission of Cell Phone Identification

Petitioner first claims that his rights under the Confrontation Clause of the Sixth

Amendment and his Fourteenth Amendment right to present a defense were violated by the admission of hearsay evidence that the victim called his mother from Petitioner's cell phone just prior to being beaten to death.

The Supreme Court has held that the admission of non-testimonial hearsay does not implicate the Confrontation Clause.  See Crawford v. Washington, 541 U.S. 36, 61-62 (2004); Davis v. Washington, 547 U.S. 813, 823-26 (2006). Crawford did not specify a "comprehensive definition" of what is testimonial, but it cited "ex parte testimony at a preliminary hearing" and "[s]tatements taken by police officers in the course of interrogations," as examples of "this core class of 'testimonial' statements." Crawford, 541 U.S. at 51-52. The entry of a name and phone number into a personal cell phone is obviously non-testimonial. It does not bear any of the hallmarks of the core class of testimonial statements. The Michigan Court of Appeals rejection of this claim was reasonable.

As a fundamental element of due process, a criminal defendant has the right to present his own witnesses and evidence to establish a defense. Washington v. Texas, 388 U.S. 14, 19 (1967); see also Crane v. Kentucky, 476 U.S. 683, 690 (1986) ("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted).

Here, evidence was presented at trial that the victim's mother allowed the victim to use her cell phone and enter contact information into the phone's directory.  When the victim's mother received a call from her son just prior to the beating, the incoming

number appeared with Petitioner's street name.  The prosecutor asserted that the victim must have previously entered Petitioner's cell phone number in his mother's phone number under that name, and this showed that her son must have been with Petitioner and using his phone when he called her.  The Michigan Court of Appeals found that the evidence should have been excluded under state hearsay rules, but the error was harmless.

Petitioner is not entitled to relief on this claim.  The error at issue involves the alleged improper admission of evidence, not the exclusion of defense evidence. Indeed, the parties stipulated at trial that the phone number associated with Petitioner's street name in the cell phone was actually registered under the name Mike Smith by the phone company. Tr 4-24-2012, pp. 241-242.  Petitioner does not assert that he was denied the opportunity to present any other defense evidence relevant to the cell phone or its contact information.  Accordingly, this claim lacks merit.

### 2.  Sufficiency of the Evidence

Petitioner says that insufficient evidence was presented at trial to sustain his conviction.  He argues there was no direct evidence connecting him to the fatal beating.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

10

Petitioner faces a steep climb to establish that the state court's discussion of the evidence unreasonably applied the Jackson standard. "Two layers of deference apply to habeas claims challenging evidentiary sufficiency." McGuire v. Ohio, 619 F.3d 623, 631 (6th Cir. 2010) (citing Brown v. Konteh, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Brown, 567 F.3d at 205 (citing Jackson, 443 U.S. at 319). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." Id. The Jackson standard is "exceedingly general," and therefore state courts are afforded "considerable leeway" in its application. Davis v. Lafler, 658 F.3d 525, 535 (6th Cir. 2011).

The Michigan Court of Appeals found that viewed most favorably to the prosecution, the jury could rationally find beyond a reasonable doubt that Petitioner was one of the assailants based on the victim's dying declarations, an officer's recollection that an eyewitness told him that she saw Petitioner beat the victim with a baseball bat, eyewitness testimony indicating that Petitioner was seen scuffling and chasing the victim earlier in the day, and testimony that Petitioner threatened someone that he would end up like the victim if he said anything.

Given the record evidence, and the considerable leeway state courts are afforded in resolving sufficiency-of-the-evidence questions, this conclusion was not unreasonable. Petitioner discounts the victim's dying declarations identifying him as

11

one of his assailants by pointing to inconsistencies in the witnesses' recollections of what the victim said on the way to the hospital before he slipped into a coma.  He also disregards the eyewitness testimony indicated that he was seen fighting with the victim and escorting him into his vehicle.  Habeas relief is not available on this issue.

3.  Prosecutor's Closing Argument and Failure to Object by Defense Counsel

Petitioner contends that the prosecutor rendered his trial fundamentally unfair in violation of due process by vouching for the credibility of his witnesses during closing arguments.  Specifically, Petitioner asserts that the prosecutor referred to the victim's family members as good people who had no reason to lie.  He also challenges the prosecutor's comments regarding Petitioner's demeanor at trial and his failure look at the witnesses when they were asked to make in-court identifications.

A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " Darden v. Wainwright, 477 U.S. 168, 181 (1986)(quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. Donnelly v. DeChristoforo, 416 U.S. at 643-45. In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his or her prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012).

A prosecutor may not express a personal opinion concerning the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." Caldwell v. Russell, 181 F.3d 731, 737 (6th Cir. 1999)(internal citations omitted). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." See United States v. Francis, 170 F. 3d 546, 550 (6th Cir. 1999)(internal citations omitted). It is worth noting, however, that the Sixth Circuit has never granted habeas relief for improper vouching. Byrd v. Collins, 209 F.3d 486, 537, n. 43 (6th Cir. 2000).

The Michigan Court of Appeals rejected Petitioner's claim by finding that the prosecutor's statements were made in response to the defense counsel's argument attacking the witnesses' credibility based on the fact that they were grieving family members looking for a scapegoat.  The prosecutor based his rebuttal on the lack of impeachment by defense counsel of his witnesses, not a personal belief in the witnesses' credibility.  With respect to Petitioner's conduct in the courtroom, the court of appeals noted that the comment was brief and the trial court had instructed the jury that the lawyers' arguments were not evidence.

Even if any of the statements were improper, it was reasonable for the court of appeals to find that they did not rise to the level of a due process violation.  Given the sizeable amount of evidence offered by the state against Petitioner made it unlikely that

13

the jury was misled by any of the statements.  Furthermore, the jury was instructed that

the lawyers' statements and arguments were not evidence.  This instruction cured any

prejudice that may have arisen from any improper vouching.  Petitioner is not entitled to

relief on this claim.

Petitioner also says that trial counsel was ineffective by failing to object to

prosecutorial misconduct.  Because the prosecutor's comments did not deprive

petitioner of a fundamentally fair trial, Petitioner is unable to establish that he was

prejudiced by counsel's failure to object to these remarks.  See Slagle v. Bagley, 457 F.

3d 501, 528 (6th Cir. 2006).

## V.  Conclusion

Accordingly, for the reasons stated above, Respondent's motion for summary

judgment based on the statute of limitations is DENIED.  However, because Petitioner's

claims are plainly meritless, the petition is DENIED.  Reasonable jurists would not

debate the Court's substantive conclusion that Petitioner is not entitled to habeas relief.

The Court therefore DECLINES to grant a certificate of appealability under 28 U.S.C. §

2253(c)(2).  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

SO ORDERED.


S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: April 20, 2016
        Detroit, Michigan